UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

BRANDON DEANDRE WILEY

CRIMINAL ACTION

NO. 10-61-JJB-SCR

**RULING ON DEFENDANT'S MOTION FOR RECONSIDERATION**

This matter is before the Court on Defendant's Motion (doc. 44) to Reconsider the Court's Ruling on Defendant's Motion to Suppress. The Government has filed an opposition (doc. 47). There is no need for oral argument. This Court's jurisdiction exists pursuant to 28 U.S. § 1331. For the reasons stated herein the Court DENIES Defendant's motion.

**Background**

On December 9, 2009, Baton Rouge City Police Officer Vincent Liberto ("Liberto") performed a traffic stop of Defendant Brandon D. Wiley ("Wiley") in the "Dixie" area of Baton Rouge, Louisiana. After stopping, Wiley approached Liberto's cruiser, at which point Liberto noticed that Wiley had a pocket knife clipped to his belt. While seizing the knife, Liberto felt objects in Wiley's pocket, including what he believed to be bullets, which he then removed (Transcript, p. 9). In addition, during the search, Liberto asked Wiley if he was a convicted felon, and Wiley responded that he was. On the basis of the bullets, Wiley's criminal history and the neighborhood in which the stop occurred—the "Dixie" area has a high rate of narcotics-related and violent crime—Liberto concluded

1

that Wiley likely had a firearm in his vehicle (Transcript, p. 44). He performed a sweep of the vehicle—which contained three passengers—and discovered a firearm underneath Wiley's seat (Transcript, pp. 40-43). Wiley was subsequently arrested and charged with being a Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1).

On June 14, 2010, Wiley moved to suppress the bullets, the firearm and the statement he made to Liberto about being a convicted felon (doc. 17), and on September 9, 2011, this Court held a suppression hearing. At the hearing, this Court ruled to suppress Wiley's statement because, at the time he made it, he was in custody and had not been *Mirandized*. However, the Court decided to allow the bullets and firearm to be admitted. The Court determined that Liberto had probable cause to stop Wiley because, according to his testimony, Liberto observed Wiley not wearing a seatbelt, failing to use a turn signal and failing to come to a complete stop at a stop sign (Transcript, p. 13). The Court also determined that Liberto acted appropriately in searching Wiley and his vehicle because Liberto saw a knife on Wiley, and while seizing it, felt bullets in Wiley's pocket and reasonably concluded that Wiley likely had a firearm in his car.

Based on the Court's ruling at the suppression hearing, Wiley and his then-attorney decided to accept a guilty plea. However, since the hearing, a video of the stop surfaced which Defendant claims contradicts some of the testimony provided at the hearing (doc. 44). Defendant has withdrawn his intent to accept

the plea pending the Court's review of the video and reconsideration of his motion to suppress.

On March 29, 2011, Defendant filed his Motion (doc. 44) to Reconsider. Defendant asserts that Liberto improperly searched Wiley because he stopped Wiley solely for failing to use a seatbelt, and Louisiana law prohibits an officer from searching a vehicle or its driver in such cases. Defendant asserts that, because Liberto had no authority to pat Wiley down, the bullets he discovered during the pat down are inadmissible; and because Liberto would not have had any reason to search Wiley's car for a firearm had he not found the bullets, the firearm is also inadmissible.

On April 26, 2011, the Government filed its Opposition (doc. 47). The Government asserts that the dash-cam video doesn't contradict Liberto's testimony regarding Wiley's traffic violations. The Government also asserts that the "inevitable discovery" doctrine applies to the bullets, firearm and statement.

## Discussion

**I. The Statement**

The Government asserts that Wiley's statement Wiley to Liberto that he was a convicted felon should be admitted under the "inevitable discovery" exception because Wiley's status would have been discovered anyway (doc. 47). Defendant did not discuss the statement in its Motion to Reconsider.

The Court finds that it correctly granted Defendant's Motion to Suppress the statement. The Government has referenced no new law or evidence in

3

support of its request that the Court reconsider its ruling. Significantly, though Liberto might have inevitably discovered Wiley's status, crucial issues in this case turn not only on *whether* Wiley is a convicted felon, but *when* Liberto discovered as much. Moreover, the Government should have no difficulty securing evidence that Wiley is a convicted felon to establish its case at trial. As such, no grounds exist for this Court to overturn its original ruling.

## II. The Bullets and Firearm

Defendant asserts that Liberto improperly searched Wiley because (1) Liberto only cited Wiley for failing to use seatbelt in his report, and the video of the stop allegedly contradicts Liberto's testimony that Wiley also failed to use turn signals or come to a complete stop at stop signs; and (2) Louisiana Revised Statute 32:295.1 ("the Seatbelt Statute") prohibits an officer from searching a vehicle or its driver solely for violations of the Statute (doc. 44). Defendant asserts that, because Liberto had no authority to search Wiley, the bullets he took from Wiley are inadmissible; and because Liberto would not have had any reason to search Wiley's car for a firearm had he not found the bullets, the firearm is also inadmissible (doc. 44).

The Government asserts that Liberto's testimony regarding Wiley's traffic violations cannot be presumed false simply because the dash-cam video failed to capture the violations (doc. 47). Alternatively, the Government asserts that the video actually depicts Wiley failing to come to a complete stop at a stop sign (doc. 47). In addition, the Government asserts that the firearm would have been

4

found eventually because Liberto could have had the vehicle towed and would have had to conduct an inventory search prior to doing so (doc. 47).

The Fourth Amendment of the Constitution of the United States forbids unreasonable searches and seizures. A traffic stop is a "seizure" under Fourth Amendment jurisprudence and is reasonable so long as the officer has probable cause to believe that a traffic violation has occurred. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Moreover, after making a valid traffic stop, the officer may demand that the driver exit the vehicle and move toward the officer. *See Pennsylvania v. Mimms*, 434 U.S. 106, 109-10 (1977); *United States v. Meredith*, 480 F.3d 366, 371 (5th Cir. 2007). The officer may then conduct a limited search of the suspect for weapons so long as the officer has a reasonable and articulable suspicion that the suspect is armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). Under the "plain feel" doctrine, the officer may seize any contraband discovered in the course of the search, so long as the contraband's identity is immediately apparent. *Minnesota v. Dickerson*, 508 U.S. 366, 375-76 (1993). Finally, if an officer has probable cause to believe that a vehicle contains contraband or evidence of criminal activity, the officer may conduct a warrantless search of the vehicle. *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996). However, Louisiana's Seatbelt Statute, which makes a driver's failure to use a seatbelt when the vehicle is in motion as a traffic violation, states that "[a] law enforcement officer may not search or inspect a motor vehicle, its contents, the driver, or a passenger solely because of a violation of [the Seatbelt Statute]."

5

The Court finds that Defendant's Motion to Suppress the bullets and firearm was correctly denied. Liberto testified that he had three bases upon which to stop Wiley: Wiley was not wearing a seatbelt; Wiley failed to use a turn signal; and Wiley failed to make a complete stop at stop signs (Transcript, pp. 9, 13). That the dash-cam video failed to show the violations does not necessarily mean that these violations did not occur, because the dash-cam does not run continuously, but must be activated to begin recording. In addition, as the Government notes, the video arguably does show Wiley rolling through a stop sign. Finally, even assuming that Liberto stopped Wiley solely on account of his failure to wear a seatbelt, the Seatbelt Statute does not necessarily preclude Liberto from searching Wiley or his vehicle. The Seatbelt Statute states that "[a] law enforcement officer may not search or inspect a motor vehicle, its contents, the driver, or a passenger *solely* because of a violation [thereof]." La. R.S. 32:295.1 (emphasis added). Here, however, Liberto had additional reasons to conduct a search of Wiley and his vehicle beyond Wiley's mere failure to wear a seatbelt. Liberto had reason to suspect that Wiley was armed and dangerous based upon the knife hanging from Wiley's belt and the neighborhood in which the stop occurred. Therefore, Liberto was constitutionally permitted to pat Wiley down. *Terry*, 392 U.S. at 27. During the course of the pat-down Liberto felt what he believed—and confirmed—to be bullets in Wiley's pocket and based on the bullets and the aforementioned circumstances, Liberto concluded that Wiley's vehicle likely contained a firearm. Therefore, Liberto was constitutionally

6

permitted to search Wiley's vehicle. *Labron*, 518 U.S. at 940; *Dickerson*, 508 U.S. at 375-76.

## **Conclusion**

Accordingly, the Court hereby DENIES Defendant's Motion (doc. 44) to Reconsider the Court's Ruling on Defendant's Motion to Suppress.

Signed in Baton Rouge, Louisiana, on this 6th day of May, 2011.

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**